This is the time and the place set for argument in the case of Joseph Pinasco v. State of California, Consolidated Numbers 12-16423 and 12-16426. Mr. Wolfe. Good afternoon, Your Honors. May it please the Court, Peter Michotte from the California Attorney General's Office on behalf of Appellants and Defendants, California Highway Patrol and CHP Officers Michael Walling and Stephen Kaufman. I'd like to reserve two minutes for rebuttal. The underlying lawsuit arose from a high-speed pursuit that resulted at its termination with the shooting death by officers Walling and Kaufman of Joseph Pinasco, Jr. This was on August 24, 2008. This followed a high-speed pursuit that lasted no more than two minutes. The appeal is from a judgment by the district court that was based upon its interpretation of a verdict that was balanced and reconciled different from what the position of the defendants was and is for how that inconsistency in the verdict should be The inconsistency is stark. It's based upon a factual finding of conduct described in the jury instruction that would support a finding of battery, albeit one without damages for the estate. But beforehand, the jury had already crossed that bridge in deciding under the Fourth Amendment that under the Graham factors, under the totality of those circumstances, the seizure and use of force was reasonable. Counsel, I guess to sort of cut to the chase here, the district court had to resolve the apparent conflict or inconsistency between the jury's verdict on wrongful death and their verdict on battery. And I read through the entire set of jury instructions. I don't see any instruction defining for the jury the fact that battery could be a wrongful act. How can the district court resolve this conflict based on their answers to the interrogatory? Well, the district court cited to the law under Floyd v. Laws and White v. Ford Motor Company, which in turn relied upon the U.S. Supreme Court case of Gillick, for examples of how under the Seventh Amendment you are, as judges under that amendment, were entitled to a fair trial by jury in civil cases. But the trial court is to avoid refuting or overturning its actions in any findings of fact by the jury. So. Well, but is that it? I thought what we're really talking about here is whether or not the district court can resolve the inconsistency without engaging in a tortured reading of the answers to the interrogatories. And I don't, I'm having a hard time seeing how we can answer, how the district court could answer that question in the face of a finding that a battery occurred, but no damages were awarded for the battery, and then a finding that there was established wrongful death, and then they were asked to establish comparative fault. How do you resolve that? I think if you look at the case of Floyd v. Laws, which was presided over at trial by Judge O'Scanlan, he did just that, where the jury, unlike this case, I admit, was instructed, if you answer this question, no, go on, don't answer the next question. But they went ahead and answered the next question. And we struck it as surpluses. Correct. But I don't see how we can strike their answers on comparative negligence as surpluses, given the way the instructions are put together. I think the totality of the instructions and how the verdict reads is that a fair reading of it is that the jury was basing its wrongful death decision on negligence. And the inconsistency remains by the way the trial court rendered the verdict. It's still inconsistent, the way it's written as the judgment, that the jury found there was no unreasonable use of force under the Graham factors, which to me, and I think under the law, is the flip side of the same coin for battery. And so this Court has recognized that by relying upon California cases, Brown v. Ranzweiler. There's Edson, I think it is. But it's cited in a recent case of Hayes v. Kimmerer, the defendant's name is Edson. So you would argue that they found battery because the shooting of plaintiff's decedent was intentional, but that nonetheless, because they didn't find unreasonable force under the other claims, then they went to comparative negligence in order to determine who was responsible for what proportion? Yes. At the heart of what I believe the trial judge based her decision on was that the jury must have felt a higher level of culpability rather than mere negligence. And so we'll not apply principles of comparative fault. I'm not sure I understand what you just said. I mean, it seems to me that where Mr. Panasco, in essence, started the pursuit by not yielding to the officers when they approached him in the intersection and jumped in his car and took off, and where he continued to try to flee after he was high-centered in the drainage ditch, that the jury could, from that evidence, have concluded that he was more culpable than the two officers, but that nonetheless, the two officers had some responsibility and shouldn't have killed him, I guess, at least to the point of 30 percent of the responsibility. Well, I think that apportionment speaks volumes to what the jury was looking at and how it assessed responsibility here. And my last statement to you about what the trial judge did segues into exactly that. If you're going to say the jury must have felt that there was some culpability more than mere negligence, then look at how they apportioned that fault. It was, to a high degree, laid upon the decedent, not my officer, the client. Scalia. What would you like us to do? Panasco. I beg your pardon, sir? Scalia. What would you like us to do? Panasco. I think that you can reconcile the inconsistency between the finding on the Fourteenth Amendment, where they acted with reasonable law enforcement purpose when they used lethal force, and under the Fourth Amendment, where they decided it was a reasonable use of force under the Graham factors. Those decisions were made by the jury before the case to be balanced with the case to be balanced with treating the battery finding as aberrational, as something that is not consistent with what the full intent of the jury tried to express in apportioning its fault. Scalia. What would the judgment be? What would the disposition of this Court be? Panasco. The disposition would be remanded to the trial court to enter a judgment consistent with your opinion, which is that principles of comparative fault should be applied here, Your Honor. Alito. But how can we do that in the face of a finding that they engaged in an intentional battery? I mean, why shouldn't we just send this back to the district court and say, we're sorry, recognize it's a 10-day trial, but you've got to start this all over again, and retry the wrongful death claim, and I guess they have rendered their decision, and neither side has appealed the other claim. Panasco. I think on the verdict and the decisions by the jury in rejecting the Fourth Amendment claim, rejecting all constitutional claims, Fourteenth Amendment, Fourth Amendment, and finding that the officers had not deprived the jury of the this person of an interest in his life under the Bain Act, that was a theory there. So I really do think that the sum and substance and the vast weight of that verdict is an expression of what the jury, given a set of jury instructions, that read, on wrongful death claim alone, in negligence. And they were the others. Well, negligence or wrongful act. And am I correct? Battery is a wrongful act, is it not? It is. And they found battery. Inconsistent with their previous factual findings. These are inconsistent factual findings. Go back and simply tell the district court, apply comparative fault here and just reduce the judgment that the jury awarded by 70 percent. Again, Your Honor, I believe the weight of the verdict in looking at the fact that they're having struggled with this verdict form, made these decisions. Well, you guys proposed the form. I mean, I didn't – you didn't object to the form of the interrogatory. This is sort of a textbook example of why it's risky to use special interrogatories when you've got so many different claims in front of a lay jury. We – we – it was actually the trial judge that wrote it. We had suggested use of a – But, counsel, if you don't like the way that the judge wrote the instructions or the verdict, you object. And you offer a better solution. You didn't do that. I mean, you have as much – if we're talking comparative fault here, there's fault on the part of the lawyers as well. Yes. What should we do about the battery? I think it, as I said, Your Honor, is aberrational in the weight of the verdict on its other notes. Why was it aberrational? Because they had – Fault on the officers. They – they intended to shoot, right? They intended to affect their shooting to affect – they intended by their shooting to affect the conduct of the decedent, did they not? Your Honor, yes. And the battery instruction has factors that are, like I said, the flip side of the same coin as the Graham factors under the Fourth Amendment. So let me ask you this. One – there are two ways of committing a battery. One is to lay a hand on the victim, and the other is to overcome the victim's resistance using unreasonable force. Could this verdict have been harmonized, focusing on the unreasonable force as a way of saying that there was 30 percent lack of reason or negligence on the part of the officers and 70 percent on the part of the victim? In other words, we define the battery not so much as an intentional torch, but also as a use of unreasonable force to overcome resistance, thereby harmonizing the concept of reasonableness. I don't know that the jury can – I, you know, I don't think the jury could come up with that kind of reasoning, not knowing the nuances of – So then we should reverse for a new trial? No, Your Honor. I would encourage – it's the court's job to harmonize, not – and the jury If we can do so without torturing the jury's answers to the interrogatory. And the rule says if we can't harmonize it, then the court must remand for a new trial. Isn't that what the rule says? Pardon? Isn't that what the rule says? Yes. But I do think it can be reconciled, and I do urge the Court to consider the direction that Floyd v. Laws went with that when Judge O'Scanlan threw out a surplusage. Yeah, but I don't see it because they didn't call it a surplusage. I mean, I see this as two flat-out inconsistent answers, and I don't know that we can harm – do you want to save some time for a rebuttal? I've got two minutes coming up right now, Your Honor. Okay. Why don't you sit down, then, and we'll hear from Mr. Wolff. Please. The Court, my name is Arnold Wolff, and I represent the Appalese. I'd like to, if I could, start out by responding to a question I think that was raised by Judge Hellerstein's, and that's this question about there being such a thing as a negligent battery. I respectfully suggest, Your Honors, there is no such thing as a negligent battery. If you commit a – What constituted battery? The instructions were that defendant intentionally touched the seating. Exactly. And there was really never – Was there a touch? And there was never an issue as to that, Your Honor. Mr. Wolff, was there a touching? There was a shooting. So the second one is a way of committing battery is the defendant used unreasonable force to overcome the resistance of the seating, Joseph Vinessi. But the touching – Which one of those two? Have you one of those two? The touching – the touching was effected through the six .40 caliber hollow-point bullets that were shot into the head, face, and neck of the decedent. That was the touching. It doesn't have to be an actual physical touching. I can hit somebody with a bat, and that's a battery. I can throw a rock at him. It's a battery, and I can shoot him, and it's still a battery. That was – that was it. The jury determined it was a – it was a battery. We know what the battery consisted of. The young man died with it. How do you know that the jury did not consider the use of unreasonable force to overcome resistance as the way the battery was committed? Either – either way, though, under either formulation, Your Honor, whether it was a touching or unreasonable force to overcome resistance of the decedent, either way, it's a battery. A battery is an intentional tort. You can't – you can't transform an intentional tort into a – Mr. Wolf, the jury assigned zero damage to the battery. Well, that's not the case, Your Honor. What the jury said was, and I would urge the Court to take a look at the verdict form again, because what the jury determined, after the jury determined there was a was, what damages do you award for harm caused to Joseph Panosco, Jr. as a result of the battery? The jury declined to award any damages for that. That didn't mean the jury found there were no damages. If you answered yes to any one of questions 1, 3, or 5, and 3 is the battery. Correct. What damages do you award for the harm caused to Joseph Panosco, Jr.? Amount of damages, the blank, zero. Right. That's exactly right. But they didn't find – The jury awarded zero damages to the battery. And they said it again on page 4 of the verdict form when they were asked in question 18, if you answered yes to any one of questions 13, 15, or 17, what damages do you award for the harm caused to Joseph Panosco, 15 being a battery instruction as to Officer Walling, and the answer is zero. Right. But again, the jury did not find there was no harm caused to Joseph Panosco, Jr. The jury decided not to award any damages. I've argued my opening brief. I mean, this is your classic jury compromise. There is no inconsistency. There's a compromise. Why shouldn't we take the compromise of the 70-30 split? Because there's no indication the jury found negligence. Well, you could say that they said the battery is overcoming unreasonably. There is no such thing as battery being a negligent tort, Your Honor. Battery is an intentional tort. Well, the jury, under the instructions, could find battery in only two ways. You can't preclude the fact they found it by the concept of using unreasonable force. Whatever rationale the jury used to find battery, battery is an intentional tort. Why didn't you ask for an instruction to that effect? I didn't think I needed an instruction that the jury would know that — well, first of all, Your Honor, the verdict form that I submitted did not call for special verdicts. My verdict form called for a finding from the jury, was this force excessive? Was they negligent? Was there unreasonable? And if so, what do you award? Well, and it damages. And so, in other words, to give the jury the factual underpinning — sorry, give the judge the factual underpinnings so the judge could mold the verdict. I've tried civil rights cases before. Okay. But when the judge said, no, we're going to go with special interrogatory form, why didn't you? Mr. Wolf, can you let me explain? I'm sorry, Your Honor. Right. When the judge decided that she was going to give this special interrogatory verdict form, why didn't you ask for an instruction that told the jury, in considering the wrongful death claim, other wrongful acts includes battery? I didn't think I needed to have the jury. This is something that's pretty much of common knowledge, Your Honor, that where a jury finds a defendant liable for battery, that that is wrongful conduct, and especially — Well, the problem in the context of a civil rights claim against law enforcement officers where excessive force is alleged is that officers are privileged to use a certain amount of force in order to overcome resistance to arrest. The question the jury had to ask was whether or not deadly force, which was employed, sadly, successfully, as to Mr. Panasco, was an unreasonable amount of force. And then, as Judge Hellerstein is suggesting, why couldn't the jury have thought, well, if Mr. Panasco is 70 percent responsible for the force that was employed against him, we're going to — we're not going to give him any money for battery, but we'll reduce the amount of the judgment that would otherwise be given. And here's the comparative level. Well, but again, the jury answered that responsibility question, apportionment of responsibility questioning, not because the jury found negligence. There's no indication the jury found negligence. They were instructed to, if they found liability under the wrongful death. My friend on the other side in his briefing argued that, well, the jury elected to answer that verdict question 26, the apportionment of responsibility questioning. I didn't see that as an election. It looked to me — and I think that that is what makes this case different from the case that Judge O'Scanlan sat as the trial judge on. They were specifically instructed, tell us what the comparative fault is here. Exactly. And that was irrespective whether they found wrongful death based on negligence or based on some other wrongful conduct. But the problem is we can't tell. And that — if it was on negligence, on that prong, then it makes perfect sense to apportion the fault. If it were on battery, I would have expected their answers to be zero for Mr. Panasco and 50 percent as to Officer Walling and 50 percent as to Officer Kaufman. But that's not what they said. Well, but again, I'm not quite sure Your Honor can interpret the jury verdict based on the jury's — can interpret the basis of the jury's wrongful death finding on the percentage responsibility that they attributed to the jury. Isn't that what we do when we harmonize? Well, again — again, you've got to harmonize from something that's actually in the record, Your Honor. We found — we know the jury found battery — But the instruction on unreasonable force is in the record. Let me ask you this question, Mr. Wolf. If you were to choose between a remand for a new trial and the comparative fault verdict, what would you choose? You know, I don't know, Your Honor. I really don't know. My clients don't want to go through a — through another trial, obviously, and relieve this episode. But based on this record, the law — I believe the law is pretty clear here that we've got a finding of a battery that resulted in this young man's death, and we have a wrongful death finding. As far as I was concerned, in a way, the jury was compelled — once the jury found battery, and we know the battery caused the young man's death, once the jury found that, the jury was compelled to find that the defendants were liable for wrongful death. Did you offer to withdraw the negligence count? No, I didn't offer to withdraw the negligence count. I did tell the judge, because we had a dispute as to whether the degree of intoxication of the decedent would come into evidence, and I stipulated that the decedent — Every count belonged to the estate. The wrongful death count belonged to the parents. Correct. So the wrongful death count is the one that is susceptible, potentially, to the comparative fault analysis. Correct. The battery claim belonging to the estate is not. Correct. We know that the estate was awarded zero, and we know the parents were awarded two million. Correct. It makes it very difficult to apportion — to not do apportion at all. Well, you say — you say that, Your Honor, but there's no indication in the record — I mean, we can — we can surmise about what the jury must have thought to come up with this apportionment. We can surmise about why the jury answered no on the Fourth Amendment claim, which I agree with my friend on the other side, is really — was really the same as the — as the — as the battery — battery claim. Why answer no? But you can't get away from the fact that the jury found wrongful conduct. The battery was wrongful conduct. And I don't think, in response to one of the questions Judge Talman had raised earlier, that the Court needed to give a specific instruction to the jury that battery constituted wrongful conduct. Well, there's — you — as you can tell, there's a bit of confusion in this case. And Judge Hellerstein asked you a question, and you were not quite certain what you would do. Right. Let me phrase this a different way. Mm-hmm. What do you want us to do? I want — I want you to — I think the trial judge got it right, and I want you to affirm what the trial judge did. That's what I want you to do. I think that if you look at the cases again, you've got — anybody that's tried cases long enough or sat and heard cases long enough understands — If we weren't to affirm, what would be your next best approach? You know, that would be up to my clients, but I would have to say a new trial. That's what I would — I would say, although no one's asked for a new trial. And I would point out to Your Honor that when there's an inconsistency in a verdict, the thing — the procedure to be followed is to point it out to the trial judge and to ask the trial judge to — to see if the jury can — can — But you didn't do that. You discharged the jury and sent them home. Exactly. So by the time anybody raised the question, it was too late. Exactly. So whether or not anybody asked for a new trial, I'm looking at Rule 49 — what is it — 49B-4 that says when the answers are inconsistent with each other, and one or more is also inconsistent with the general verdict, the court must order a new trial? Well, again, there's been — there's been no — at face value, it appears to me that the — that the battery finding in the affirmative is inconsistent with the Fourth Amendment finding in the negative. There is no — but that's not being challenged here. What's being challenged is the — is the judge's ruling that comparative negligence doesn't apply. And what I'm suggesting to the court is there's no inconsistency between the finding of the judge that the battery was based on — that the wrongful death — jury wrongful death finding was based on their finding that the shooting was what caused this young man's — young man's death. That's the only — and I don't see that as a — as an inconsistency. The cases that discuss inconsistency are cases that typically come up when someone's looking for a new trial or for a judgment notwithstanding the verdict. This is not one of those cases. But I'd like to get back to the point I was trying to make before, and that is compromise is a reality of the jury process. What you had here was your classic jury compromise. They found the defendant's liable for the battery, and they found him liable for wrongful death, and they exonerated him for all of the constitutional claims, even though the Fourth Amendment claim was just a constitutional iteration of the — of the battery claim. And I'd suggest to the court that that is just not a basis for reversing this verdict. Had they determined, under your argument, that the force employed was reasonable because he was actively resisting arrest, he was intoxicated, he was leading them on a 100-mile-an-hour chase, that one could say that it was not a battery because the officers were privileged to use deadly force in order to overcome the resistance. But the verdict doesn't say that either. Well, it's hard. I mean, I think it's built into — if you look at the actual jury instruction, I think 33 on battery, that's built in. And if you look at the test the jury was supposed to use to determine whether defendants were liable for battery in Instruction 33, they're the same test that the jury was instructed to determine if the officers were liable for the Fourth Amendment violation. They were the — they were the same. But again, that's not the basis of the appeal here. What they're saying is, well, you've got to ignore the jury's finding of battery, and you've got to make the assumption that the jury's finding was based on negligence. And I suggest to you that would be pure speculation on the court. Plus, again, I'm getting back to this jury compromise notion. If you look at what courts have done to harmonize verdicts, they've really gone fairly far afield. And I'm including the United States Supreme Court within that comment. This verdict is harmonizable if you understand that this was a jury compromise. Well, my time is up, and I appreciate the court — Time is up, Mr. Wolf. But thank you — thank you for your argument. Thank you. The State gets the last word. So, Mr. Mishra. Thank you, Your Honor. At the very least, as the judgment stands, it doesn't reconcile the inconsistency. That remains. And it doesn't pay homage to what the jury was likely trying to express in doing the math and in the consciousness of jurors, knowing full well through news, the ballot process, what comparative fault means, the Fair Responsibility Act they've all been through, they have that in their consciousness more than what does a battery mean. And if they're trying to say, without knowing what other wrongful conduct is, to judge the wrongful death claim, and looking at all the negligence instructions that are there saying, these are the only instructions you get on this claim, negligence, to me, and the vote of saying 70 percent at fault for the decedent and 30 percent combined for the done justice by the judge. Let me ask you both a practical question. You now have a jury that has given you a valuation of the case. I don't know how my colleagues feel about what we ought to do with this case, but have you all talked about perhaps taking another look at settlement before you ask us to rule as a matter of law on this appeal? Recognizing the risks that you are facing from our questioning as to what may or may not happen after you go home today? At some point, Mr. Wolf, I have had those conversations. I can't represent to the Court what we're willing to do. I'm not asking you what the status of negotiations are. I'm just asking whether it would be worthwhile for you to pursue another round of talks before we issue an opinion. We can certainly hold off doing that for a reasonable period of time if you think it might be productive to do that. Perhaps you ought to go from here to the staff council. I beg your pardon, Your Honor? Perhaps you ought to go from here to the staff council. I mean, I assume you've got your clients here. We've got mediators downstairs. They could probably see you on pretty short notice. Okay. I'd be glad to talk to my clients, see what their willingness is. All right. Why don't you talk to your respective clients, and by close of business tomorrow, just send us a letter saying we think it would be productive for us to talk, or no, go ahead and — Shall we do that as an electronic filing? That'll be fine. You can do it in a letter form, and one of you — you both don't have to sign it. You can represent it. You talk to the other counsel, and — You could just have a chat together as you leave the courtroom. Thank you, Your Honor. Along that line, I think you have heard that you've each made your pitch that you want things to either — in your case, you want us to take the jury's relative assignment and make that work. He wants us to affirm the district judge, but you've heard in each case that the rules, the fallback is a new trial. So, while you roll the dice, keep that in mind. Appreciate that. All right. Thank you both. The case is very well argued. We'll take it under submission and await to hear from you. Thank you both. Thank you.
judges: Hellerstein, Tallman, Smith